**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| TRIPPY GOAT LLC | * | |
| Plaintiff, | * | |
| | | Civil Action No. 8:25-cv-02653-PX |
| v. | * | |
| 1661, INC. | * | |
| Defendants. | * | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

Pending is Defendant 1661, Inc. d/b/a GOAT ("GOAT")'s Motion to Dismiss for lack of subject matter jurisdiction or alternatively personal jurisdiction.  ECF No. 15.  The issues are fully briefed, and no hearing is necessary.  See Loc. R. 105.6.  For the following reasons, the motion to dismiss is granted.

## I.     Background

Plaintiff, Trippy Goat LLC, ("Trippy Goat") owns and operates a farm and distillery that sells handcrafted alcoholic beverages, spirits, and promotional clothing.  ECF No. 1 ¶¶ 8–9, & 15.  Defendant GOAT is an online, retail reseller of sneakers and clothing through an e-commerce platform named "GOAT."  *Id*. ¶ 19.  As of November 2021, GOAT owns U.S. Trademark Registration Nos. 3506834 and 4103419 for the mark "GOAT" in Classes 025 (clothing) and 035 (catalog ordering).  *Id*. ¶¶ 21–22.

On October 12, 2022, Trippy Goat filed with the United States Patent and Trademark Office ("USPTO") registration applications for its service marks on an intend-to-use basis, also under the same classes, 025 and 035, applicable to clothing and catalog ordering.  *See* ECF Nos. 1-1–1-4

(Application Nos. 97629259, 97629299, 97629325, and 97629340).  At the time of the filing, Trippy Goat had not yet used its marks.  ECF No. 1. ¶ 13; ECF No. 15-1 at 15.

On August 29, 2023, the USPTO published Trippy Goat's applications.  ECF No. 1 ¶ 12. On October 4, 2023, GOAT wrote to Trippy Goat to express concern that the use of Trippy Goat's marks will cause confusion with the GOAT mark as to the provision of clothing and services.  ECF No. 1-19 at 5.  GOAT also notified Trippy Goat of its trademark rights and asked that Trippy Goat "immediately contact" GOAT to "discuss the matter."  *Id*.  Thereafter, GOAT followed up four times in the ensuing months to initiate discussions, which Trippy Goat ignored.  ECF No. 15-4.

On November 21, 2023, Trippy Goat, through counsel, responded in writing that it disagreed with GOAT's concerns and made clear that it would not refrain from using or registering its marks.  ECF No. 1-19 at 2.  Trippy Goat further requested that any proposals be put in writing and stated it "look[ed] forward to litigating this matter in the TTAB[1] and in court if necessary." *Id*.

GOAT in turn, filed with TTAB its Notice of Opposition on December 22, 2023,  asserting that registration would cause confusion, mistake, or deceive consumers as to the affiliation, connection, or association between GOAT and Trippy Goat.  ECF No. 1 ¶ 81; ECF No. 1-20 (the "Opposition").  Discovery ensued in the TTAB proceedings.  *See* ECF No. 15-5; ECF No. 15-7 at 3.  However, in June 2024, Trippy Goat's CEO contacted GOAT's CEO to discuss the possibility of settling the TTAB action.  ECF No. 15-6 at 5.  The parties next agreed to suspend the TTAB action and related discovery to facilitate settlement talks.  *Id*. at 1–5.

---

[1] TTAB refers to the Trademark Trial and Appeal Board which, according to the USPTO, "functions like a court for trademark matters," concerning trademark registration. https://www.uspto.gov/trademarks/trademark-trial-and-appeal-board/about-ttab

The matter seemed to languish until February 18, 2025, when new counsel entered an appearance for Trippy Goat in the TTAB matter. ECF No. 15-8. GOAT once again attempted to reignite settlement discussions for the next six months, through August 2025. *See* ECF No. 15-9. Those attempts were met with Trippy Goat's silence. *Id*.

Then, seemingly out of the blue, Trippy Goat extended a take-it-or-leave-it settlement offer to GOAT on August 4, 2025, and gave GOAT four days to accept. ECF No. 15-10 at 2–4. GOAT asked for two additional weeks to consider the offer, to which Trippy Goat never responded. *Id*. Instead, on August 11, 2025, Trippy Goat filed this lawsuit. ECF No. 1.

Trippy Goat now asks this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., to declare that: (1) Trippy Goat's marks are sufficiently different such that they do not infringe on GOAT's marks; (2) Trippy Goat is entitled to register its marks and that the Opposition before TTAB must be dismissed; (3) several of GOAT's marks, currently not in use, must be completely or partially invalidated; (4) GOAT should be estopped from asserting its "alleged rights" in its service marks against Trippy Goat; and (5) GOAT has engaged in "trademark bullying," for which GOAT should be made to pay Trippy Goat's legal fees under the Lanham Act, 15 U.S.C. § 1117. ECF No. 1 ¶¶ 108-209. GOAT moves to dismiss the Complaint on several grounds, but principally because no case or controversy exists sufficient to trigger a right to relief under the Declaratory Judgment Act. ECF No. 15-1 at 19–26.

Because the Court agrees it lacks subject matter jurisdiction, it will dismiss the Complaint, as it must, without prejudice, and decline to reach the remaining arguments in favor of dismissal. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

## II.    Analysis

The Declaratory Judgment Act provides that where an "actual controversy within its jurisdiction" exists, the Court may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Court can invoke the Act only where "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equip. N. America, Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (citation omitted). This jurisdictional requirement mirrors that sufficient to confer constitutional standing pursuant to Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007). For the Court to have jurisdiction, the case must present a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 127; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). It must be a "real and substantial" controversy, admitting of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 241. When invoking the Declaratory Judgment Act, the "difference between an abstract question" and a "controversy" is "necessarily one of degree." *Hogs & Heroes Found. Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 495 (D. Md. 2016) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). *See also Hewlett–Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009).

As the party seeking declaratory judgment, Trippy Goat bears the burden of establishing that jurisdiction is proper. *See Evans v. B.F. Perkins, Co. a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). *See also Arris Grp., Inc. v. Brit. Telecommunications PLC*, 639 F.3d

1368, 1373 (Fed. Cir. 2011) ("The burden is on the party claiming declaratory judgment jurisdiction to establish that an Article III case or controversy existed at the time the claim for declaratory relief was filed."). The Court may resolve jurisdictional questions either from the face of the Complaint, but where necessary, may go beyond the four corners of the pleading without converting the motion to one for summary judgment. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.

The Complaint, viewed most favorably to Trippy Goat, avers that GOAT is imminently poised to advance an infringement action against Trippy Goat for its use of GOAT's marks such that relief is warranted. ECF No. 1 ¶ 86. Trippy Goat points to three events in support of this contention: (1) GOAT's December 2023 TTAB action, (2) GOAT's other infringement lawsuits brought against other companies, and (3) GOAT's October 4, 2023, letter. ECF No. 1 ¶¶ 70–86; ECF No. 27 at 22. The Court cannot agree with Trippy Goat.

For one, the existence of a TTAB notice of opposition alone is not "a charge or warning of" a future infringement action. *See Winestore Holdings LLC v. Justin Vineyards & Winery LLC*, No. 3:18-CV-467-RJC-DCK, 2019 WL 4491530, at *4–*6 (W.D.N.C. Sept. 18, 2019). *See also Hogs & Heroes Found. Inc., Inc.*, 202 F. Supp. 3d at 495 ("At the outset, it bears noting that 'the existence of a dispute before the TTAB is insufficient to establish sufficient adversity for purposes of a declaratory judgment action.'") (quoting *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 395 (S.D.N.Y. 2011)); *1-800-Flowers.com, Inc. v. Edible Arrangements, LLC*, 905 F. Supp. 2d 451, 456 (E.D.N.Y. 2012) (the filing of an opposition in TTAB does not reflect "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (quoting *MedImmune, Inc.*, 549 U.S. at 126. This is especially so when considering that the TTAB matter has been pending since December 2023 and is currently

suspended in favor of pursuing negotiated resolution.  The stalled TTAB action is not an imminent infringement dispute in the offing.

Second, GOAT's other enforcement proceedings against unrelated parties bears not at all on whether GOAT will pursue the same against Trippy Goat.  ECF No. 1 ¶¶ 70–76; ECF No. 27 at 18–19 (citing *1661, Inc. d/b/a GOAT v. Culture King, USA, Inc. et al.*, No. 2:24-cv-08420 (C.D. Cal. 2024); *1661, Inc. v. PESJ Holding Company, LLC et al.*, No. 2:23-cv-10853 (C.D. Cal. 2023); *1661, Inc. v. Green Goat, LLC et al.*, No. 8-23-cv-00490 (C.D. Cal. 2023); *1661, Inc. v. Goatlift, LLC, et al.*, No. 2:24-CV-00078 (S.D. Ohio 2024)).  At best, four lawsuits in two years reflects GOAT's diligence in protecting its marks.  *Cf. Winestore Holdings LLC v. Justin Vineyards & Winery LLC*, No. 317CV00326RJCDSC, 2018 WL 3764095, at *5 (W.D.N.C. Aug. 8, 2018) ("Defendants' aggressive litigation of similar matters in the past and Defendants' later filed TTAB opposition are irrelevant to the present case."); *Hogs & Heroes Found. Inc.*, 202 F. Supp. 3d at 495 (collecting cases); *CAE Screenplates, Inc. v. Beloit Corp.*, 957 F. Supp. 784, 792 (E.D.Va.1997) (five patent actions over 27 years is "too remote to support a claim of reasonable apprehension of suit").  But as to Trippy Goat, GOAT has rather tried—for two years—to pursue resolution short of trial.  ECF Nos. 15-6–15-9.  Thus, the mere existence of other infringement actions does not make immediate or concrete any similar dispute here.

Last, Trippy Goat tries mightily to cast GOAT's October 4, 2023, letter as a command that Trippy Goat "cease and desist" using its marks under threat of "an imminent infringement action." ECF No. 27 at 21–23.  *See also* ECF NO. 1 ¶ 84.  Not so.  The letter instead explains that GOAT owns numerous marks, protecting the GOAT brand, and expresses "concern[]" that Trippy Goat's offer of goods and services with Trippy Goat's marks will cause consumer confusion.  ECF No. 1-19 at 5.  But rather than commanding Trippy Goat to take any particular action, the letter asks only

that Trippy Goat "immediately contact" GOAT to discuss the matter further. *Id*. A single request to talk simply does not create a legally cognizable controversy. *See InVue Sec. Prods., Inc. v. Merch. Techs., Inc.*, No. 3:12-CV-88-RJC-DSC, 2012 WL 2577452, at *3 (W.D.N.C. July 3, 2012). *See also Winestore Holdings LLC*, 2019 WL 4491530, at *5–*6 (mere statement that the use of marks could create "a likelihood of confusion" and "may constitute trademark infringement" are insufficient). *Geospan Corp. v. Pictometry Int'l Corp.*, 598 F. Supp. 2d 968, 971 (D. Minn. 2008) (construing similar letter as seeking "information regarding potential infringement, not an assertion of an already determined legal interest."). *Cf. Sasson v. Presse*, No. 15-cv-00194, 2016 WL 1599492, at *1 (S.D.N.Y. Apr. 20, 2016) (concluding defendant's correspondence is a cease-and-desist letter when it demanded plaintiff to stop using the service mark). Moreover, GOAT certainly did not behave like the letter was *demanding* Trippy Goat to stop using marks under threat of litigation. GOAT rather tried to settle the matter for nearly two more years and seemingly would have continued down that path had Trippy Goat not commenced this litigation.[2]

Accordingly, the Court concludes that no sufficiently concrete and immediate controversy exists to trigger jurisdiction under the Declaratory Judgment Act. *Volvo Const. Equip. N. America, Inc.*, 386 F.3d at 592. Thus, the Court dismisses the Complaint without prejudice.

---

[2] Trippy Goat also makes much of its decision to use its marks in commerce since January 2025. ECF No. 27 at 12; ECF No. 1 ¶¶ 10–18. Notably, GOAT has taken no enforcement action since January 2025 and instead agreed to suspend TTAB proceedings in favor of attempted settlement. From this, the Court cannot infer that a sufficiently defined and immediate infringement action exists between the parties.

### III.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction (ECF No. 15) will be GRANTED.

A separate order follows.

<table>
<tr><td>　07/20/2026　</td><td>　　　/s/　　　　　</td></tr>
<tr><td>Date</td><td>Paula Xinis<br>United States District Judge</td></tr>
</table>